# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| JASON JAY BRINGUS,<br><br>　　　　Petitioner,<br><br>vs.<br><br>STEPHEN WEIS,<br><br>　　　　Respondent. | No. C23-3021-LTS-KEM<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

## I.　　INTRODUCTION

Before me is Jason Jay Bringus' amended petition (Doc. 10) for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent, Stephen Weis, is the warden of the facility at which Bringus is incarcerated. This case is fully submitted and I find that oral argument is not necessary. *See* Rules Governing § 2254 Cases, Rule 8(a).

On February 23, 2015, Bringus pleaded guilty to attempted murder and robbery. Prior to sentencing, he filed a motion in arrest of judgment in which he argued that he pleaded guilty solely in order to be sentenced and transported for treatment of a painful hernia. The Iowa District Court denied the motion and proceeded to sentence Bringus. The Iowa Court of Appeals affirmed and the Iowa Supreme Court denied further review. Bringus pursued a postconviction relief (PCR) action based on ineffective assistance of counsel for failing to present expert testimony supporting his motion in arrest of judgment. He filed a second PCR application adding a claim of a speedy trial violation. The Iowa courts ultimately denied both claims.

Bringus' § 2254 amended petition is before me on the issue of ineffective assistance of counsel for failure to adequately present and argue the motion in arrest of judgment.

*See* Doc. 10.  For the reasons that follow, I conclude that Bringus cannot succeed on the merits of his claim.

## II. STATE COURT PROCEEDINGS

On August 14, 2014, the State of Iowa charged Bringus by trial information with five crimes, including attempted murder and robbery in the first degree.  Doc. 13-11 at 5.  The charges stemmed from Bringus entering an elderly couple's home and placing a knife at the husband's throat while demanding money before he was shot in self-defense.  Doc. 21-1 at 9.  On November 17, 2014, Bringus and counsel appeared in court for a plea hearing.  Doc. 13-1.  Bringus' counsel indicated Bringus preferred to enter an *Alford*[1] plea as to the attempted murder charge, and to plead guilty to two other charges, with the State agreeing to drop the remaining charges.  *Id*. at 3-4.  During that hearing, Bringus asked if he could have a psychological evaluation.  *Id*. at 14.  At that point, the hearing adjourned.  *Id*. at 14-15.

The plea hearing reconvened on February 23, 2015.  Doc. 13-2.  Bringus pleaded guilty to attempted murder (an *Alford* plea) and robbery in the second degree (regular plea).  *Id*. at 33.  During the plea colloquy, Bringus testified he was satisfied with the advice and services rendered by his attorney.  *Id*. at 31.  When Bringus' counsel advised that the defendant was eager to proceed with sentencing as soon as time allowed, the court advised Bringus that the time to file a motion in arrest of judgment would be due no less than five days before March 9 (the date of sentencing).  *Id*. at 36-38.

Counsel filed a motion to arrest judgment on March 4, 2015, and the court held a hearing on the motion on March 9, 2015.  Doc. 13-3.  Bringus testified that after entering his guilty plea, he contacted counsel and stated the only reason he pleaded guilty was because of pain associated with a hernia.  *Id*. at 3.  Bringus explained he was in non-stop

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

pain at the time of his guilty plea due to a hernia in his stomach region that was about the size of a basketball.[2] *Id*. at 4-5. Bringus testified that he was advised by medical staff at the jail that he would need surgery, but that it could not be scheduled until he got to Oakdale.[3] *Id*. at 7. As such, Bringus testified that his decision to plead guilty was not for any reason other than wanting to get to Oakdale so that he could have his hernia surgery. *Id*. He testified he was not thinking correctly and was still having problems thinking clearly because of the pain. *Id*. At the hearing, Bringus' counsel offered an exhibit regarding Bringus' medical appointments. Bringus testified he had previously written the ombudsman's office in late January and the beginning of February regarding the treatment of his hernia and that it continued to grow and get worse since writing those letters. *Id*. at 8-9. He requested to withdraw his guilty plea. *Id*. at 9. Counsel argued that Bringus' medical condition appeared genuine and that one could see how his hernia was causing him constant pain and discomfort, which could have motivated him to enter a guilty plea in hopes that he would receive appropriate medical care. *Id*. at 12-13.

The court denied the motion, reasoning that the record from the guilty plea did not support Bringus' assertion that he was laboring under mental or physical deficiencies at the time he entered his plea. Doc. 13-11 at 13-14. During the plea hearing, the court specifically discussed health issues that may have affected the voluntariness of his plea and Bringus never indicated he was in such physical discomfort or mental or emotional distress that he was not entering his plea on a voluntary basis. *Id*.

On March 16, 2015, the court sentenced Bringus to an indeterminate term not to exceed 25 years for attempted murder and an indeterminate term not to exceed ten years

---

[2] Bringus displayed his hernia for the court during the proceeding. Doc. 13-3 at 4.

[3] Iowa's Medical and Classification Center is located in Oakdale, Iowa. It serves as the "reception and classification center for all those entering the adult male institutional corrections system." *See* https://doc.iowa.gov/districts-prisons/iowa-medical-and-classification-center (last visited March 10, 2025).

3

Case 3:23-cv-03021-LTS-KEM    Document 29    Filed 03/14/25    Page 3 of 15

for robbery in the second degree with the terms to run consecutively. Doc. 13-4 at 5, 7-8. Bringus appealed the sentence on November 17, 2015, based on the denial of his motion in arrest of judgment. *See* Doc. 13-5. The Iowa Court of Appeals affirmed. Doc. 13-7. Bringus sought further review with the Iowa Supreme Court, which was denied. Doc. 13-9.

Bringus filed a PCR application on April 23, 2015, and an amended application on December 10, 2018. Doc. 13-11 at 21-27, 33-34. He alleged ineffective assistance of counsel based on counsel's failure to present evidence, such as testimony from a medical doctor, in support of the motion in arrest of judgment. *Id.* at 33-34. He also filed a motion for expert witness at state expense, which was granted. *Id.* at 35-38. Bringus then filed a second amended PCR application based on an alleged speedy trial violation.[4] *Id.* at 40-41.

The court held a bench trial on the ineffective assistance of counsel claim on January 6, 2021. The court denied Bringus' claim on March 20, 2021. Doc. 13-12 at 29-35. The court considered a report from Bringus' expert that Bringus' plea was not knowing or voluntary because of his low functional intelligence, the pain of his hernia and the influence of his medication. *Id.* at 32. The court noted that while the trial judge did not have the benefit of expert testimony on these factors, he was aware of them as Bringus' functional intelligence was highlighted on the record extensively in the plea hearing and his medication was discussed in detail on the record in the hearing as well. *Id.* at 33. His hernia was also the focal point of the motion in arrest of judgment hearing.

---

[4] Bringus filed a motion for summary disposition on the speedy trial issue, which was denied. The State's cross motion for summary disposition on this issue was granted. *See* Doc. 13-11 at 62-68. The court summarily denied Bringus' PCR action, which the Iowa Supreme Court concluded was erroneous because Bringus had raised two issues (ineffective assistance and a speedy trial violation), only one of which (the speedy trial violation) was the subject of the parties' motions for summary disposition. *Id.* at 78-79. As such, the case was remanded to the district court to rule on the ineffective assistance of counsel claim.

The court concluded that counsel's strategy not to use an expert was reasonable, as he could have concluded that utilization of an expert was unnecessary and repetitive. *Id.* As such, Bringus failed to demonstrate a deficiency in his trial counsel's performance. The court also found that Bringus had failed to demonstrate prejudice because, as previously noted, the trial judge had all the information an expert would have provided. *Id.* at 33-34. The court also noted that all parties agreed that Bringus had ulterior motives at his plea hearing because he planned to plead guilty and be sentenced so he could receive his hernia surgery and then challenge his plea. *Id.* at 34. The court reasoned:

> It is difficult to argue that one was overwhelmed by the complexity of the plea hearing processes, while also acknowledging that one intended to abuse such a process. Given that glaring contradiction, the court cannot conclude that expert testimony would have changed the result of the motion in arrest of judgment.

*Id.*

Bringus appealed the ruling on his PCR application on March 29, 2021. *Id.* at 36-37. The Iowa Court of Appeals affirmed. Doc. 13-16. It reasoned:

> We conclude that, even if counsel had called an expert at the motion-in-arrest-of-judgment hearing to testify about the pain Bringus experienced when his pleas were taken, there is no reasonable probability Bringus would have insisted on going to trial, notwithstanding his professed understanding that this was the consequence of a successful motion.

*Id.* The Iowa Supreme Court denied further review on April 12, 2022. Doc. 13-18. Bringus filed the instant § 2254 petition on April 9, 2023.

### III.     APPLICABLE STANDARDS

Section 2254 states that, "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." "The

5

writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) prescribes the standards for this court to review a state prisoner's petition for habeas corpus relief.

> A federal court still may not grant habeas relief unless the state court adjudication:
>
> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme court; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Nash v. Russell*, 807 F.3d 892, 896 (8th Cir. 2015) (holding that under the AEDPA, a federal court can grant habeas relief only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.") (quotation and citation omitted).

To establish a claim for ineffective assistance of counsel, a movant must prove that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient" performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), that is, conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. When evaluating ineffective assistance claims, a court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance" to which a criminal defendant is entitled. *Johnson v. United States*, 278 F.3d 839, 842 (8th Cir. 2002) (citation omitted). Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are

6

"virtually unchallengeable." *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). However, "[s]trategy resulting from lack of diligence in preparation and investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013) (citation omitted).

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). A showing of prejudice requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

Because a movant must show both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").

## IV.  DISCUSSION

### A.  Bringus' Arguments

Bringus argues his counsel breached an essential duty when he failed to adequately prepare and argue the motion in arrest of judgment. Doc. 16 at 11. Specifically, he

7

argues counsel should have procured medical testimony as this was the only way to prove Bringus' pleas were not entered intelligently or voluntarily. *Id.* He notes that his counsel knew Bringus was in great pain, had requested a psychological evaluation, was low functioning and was a special needs student in high school. *Id.* at 11-12. He cites *Castro v. State*, 795 N.W.2d 789, 795096 (Iowa 2011), arguing that a causation inference could not be drawn without expert testimony. He argues that the expert testimony during his PCR proceeding demonstrates the usefulness of that testimony, which the district court acknowledged. Bringus argues it was error for the district court to conclude it was reasonable to forego the use of an expert because the court cited no authority and had the expert testimony been presented, the trial court would have found Bringus' plea was not entered knowingly and voluntarily.

Bringus also argues he was prejudiced by his counsel's breach of an essential duty because, based on his testimony at the PCR trial, he would have proceeded to trial had he been allowed to withdraw his guilty plea. He notes this is corroborated by the fact he could not make a factual basis for the attempted murder charge, as evidenced by his *Alford* plea and testimony at his motion in arrest of judgment hearing that he did not know how an *Alford* plea worked, and was adamant he was not guilty of attempted murder. He argues that the Iowa Court of Appeals' finding that "there is no reasonable probability Bringus would have insisted on going to trial" is therefore contradicted by the record. He contends the record shows he had diminished capacity and/or intoxication defenses that he could have pursued at trial had his motion in arrest of judgment was granted.

### B. Respondent's Arguments

Weis argues that the Iowa courts reasonably determined Bringus' counsel had no duty to hire an expert to opine on the voluntariness and knowing character of the guilty plea. He argues that Bringus did not alert the Iowa courts as to the federal nature of his voluntariness claim such that the state courts' rejection of the ineffective assistance claim

8

rests on an adequate and independent evaluation of Iowa law governing guilty pleas. He argues that Iowa's courts reasonably held trial counsel did not breach a duty to hire an expert because the guilty plea was knowing and voluntary and reasonably held that Bringus failed to prove prejudice.

## C. *Bringus' Reply*

Bringus argues that while voluntariness is a piece of the analysis of whether trial counsel was ineffective, his claims are grounded in the Sixth Amendment right to effective assistance of counsel and the standard established in *Strickland*. He also argues that the Iowa courts relied on federal standards in denying his claim.

## D. *Analysis*

I will begin with Weis' argument that the state courts' judgment is supported by adequate and independent state law grounds. He argues that although Bringus exhausted a federal-law-based ineffective assistance of counsel claim, the underlying voluntariness claim was based only on state law. Weis contends that merely citing the state-law equivalent of a potential federal claim does not fairly present the federal version. While Bringus argued his guilty plea was not knowing and voluntary, he cited only Iowa case law addressing voluntariness and the use of experts to create an inference of involuntariness. Therefore, according to Weis, Bringus did not present and exhaust a federal voluntariness claim and the holding on voluntariness is not reviewable as it is an adequate and independent state law determination. Doc. 13-13 at 17-18.

Under the adequate-and-independent-state-grounds doctrine, the "Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 772, 729 (1991). Stated another way, a federal court "lacks jurisdiction to entertain a federal claim on review of a state court

9

judgment if that judgment rests on a state law ground that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Foster v. Chatman*, 578 U.S. 488, 497 (2016). On the other hand, when application of state law "depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and [federal] jurisdiction is not precluded." *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).

Here, Weis argues that the "state-law holding on voluntariness is an adequate-and-independent state-law determination, rendering the claim non-cognizable in a federal habeas case." Doc. 22 at 20. He argues that the state courts properly determined, under state law, that an expert was not required to challenge the voluntariness of his guilty plea. Because counsel did not err with respect to state law, he contends there is no basis for federal habeas relief on the ineffective assistance of counsel claim presented here.

If Bringus' habeas claim was that his guilty plea was involuntary, Weis may have a point. However, his claim is that his counsel was ineffective for failing to offer evidence in support of the alleged involuntariness of his claim. While a slight distinction, the ineffective assistance claim is based on federal law and thus, I find it reviewable. Moreover, the state courts did not rely on Iowa law concerning voluntariness in denying Bringus' claim. The district court analyzed both the performance of counsel and prejudice. On the issue of counsel's performance, the court stated:

> Bringus's trial counsel testified he had never utilized a medical expert in the context of a motion in arrest of judgment. By all appearances, such a practice does not appear commonplace. On the other hand, caselaw exists which suggests such an expert may be necessary to assist the judge on matters of pharmacology, psychology, etc. *See State v. Lowe*, No. 15-1679, 2016 WL 4543974, at *4 (Iowa Ct. App. Aug. 31, 2016) ("Lowe acknowledges that a medical expert would ordinarily be necessary to demonstrate that the alteration of his medication regimen rendered his pleas unknowing and involuntary.").

> While it is impossible to know precisely what an expert would have testified to in 2015, the court does have the benefit of an expert opinion at

10

Case 3:23-cv-03021-LTS-KEM    Document 29    Filed 03/14/25    Page 10 of 15

this juncture. Natalie Denburg, PhD, a licensed psychologist evaluated Bringus and produced a report. She concluded that, in her expert opinion, Bringus's plea was not knowing or voluntary. This opinion was based upon three factors: 1) Bringus's low functional intelligence; 2) the pain of his hernia; and 3) the influence of medication.

Such information, synthesized as it was by Dr. Denburg, would have no doubt been useful to the trial judge. However, it is worth noting that the trial judge was already aware of all of those factors considered by Dr. Denburg. Bringus's functional intelligence was highlighted on the record extensively in the plea hearing. Similarly, Bringus's medication was discussed in detail on the record in the same hearing. And the pain from Bringus's hernia was the focal point of the motion in arrest of judgment hearing. The only thing the trial judge lacked was the imprimatur of an expert stating her conclusion that Bringus's plea was not knowing or voluntary.

The decision not to call an expert but rather emphasize Bringus's physical pain in the motion in arrest of judgment hearing was a reasonable strategy. With the benefit of hindsight, perhaps an expert would have been advisable. But it is not the province of the court to second-guess trial counsel's strategy. In the end, the strategy was not an unreasonable one. Trial counsel could have reasonably believed that utilizing an expert such as Dr. Denburg was unnecessary and repetitive.

For these reasons, Bringus's claim must fail; he failed to show a deficiency in trial counsel's performance. Because a failure of either prong is fatal to an ineffective assistance claim, the court need not consider the prejudice prong. But given the arguments by the applicant, the court believes the prong should be addressed.

Doc. 13-12 at 32-33. As for prejudice, the district court reasoned:

As the court previously noted, the trial judge possessed all of the information highlighted by Dr. Denburg in formulating her opinion. Given that the trial judge already possessed all the knowledge Dr. Denburg (or presumably any other expert) would have testified to, was it likely the outcome of the motion in arrest of judgment would have changed? The court thinks it unlikely.

11

> One final point bears emphasizing: all parties agree that Bringus had ulterior motives in his plea hearing. His plan essentially involved doing whatever was necessary to get the judge to convict and sentence him so [he] could get a surgery at Oakdale and then turn around to challenge the plea. This plan, put most charitably, involved an intent to break the terms of his plea deal and mislead the trial judge. This "plan" bespeaks an intentionality (and misguided craftiness) to his actions at the plea hearing.
>
> Again, trial counsel, PCR counsel, and Dr. Denburg all candidly acknowledge that Bringus planned all along to renege after his plea hearing. This chicanery would be difficult to overlook for any trial judge. It is likely that the trial judge in this matter (or any trial judge) would discount much of Bringus's contentions as to the knowingness and voluntariness of his plea. It is difficult to argue that one was overwhelmed by the complexity of the plea hearing processes, while also acknowledging that one intended to abuse such a process. Given that glaring contradiction, the court cannot conclude that expert testimony would have changed the result of the motion in arrest of judgment.

Doc. 13-12 at 33-34.

On appeal, the Iowa Court of Appeals focused on the prejudice prong:

> In asserting that he would have proceeded to trial, Bringus cites his acknowledgment at the motion-in-arrest-of-judgment hearing that withdrawal of his pleas would mean trial. But his "self-serving answer[] to [a] leading question" was belied by his plea-hearing concession that he understood he was giving up his right to have a trial. *See Doss [v. State]*, 961 N.W.2d [701,] 714 [(Iowa 2021)].
>
> Bringus' attorney confirmed Bringus "understood the finality" of his plea. At the post-conviction-relief hearing, he explained Bringus "didn't want to proceed to trial on it, . . . he wanted to quote unquote, get going. He knew that he was going to prison and . . . he wanted to try to get the best deal he possibly could." He said Bringus "was saving himself time in guaranteeing that he wasn't going to get that possibility of consecutive sentences, so that was the benefit." Bringus "offered no substantial contemporaneous evidence supporting his claim." *Id.* at 724 (Appel, J., specially concurring). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but

12

> for his attorney's deficiencies." *Id.* (citing *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017)).
>
> We conclude that, even if counsel had called an expert at the motion-in-arrest-of-judgment hearing to testify about the pain Bringus experienced when his pleas were taken, there is no reasonable probability Bringus would have insisted on going to trial, notwithstanding his professed understanding that this was the consequence of a successful motion. We affirm the denial of Bringus' postconviction-relief application.

Doc. 13-16 at 3-4. Bringus has not established that the state court decision was contrary to or involved an unreasonable application of clearly established federal law. He relies on Iowa law to argue the usefulness of an expert to support the motion in arrest of judgment but has not cited any clearly established federal law that requires such testimony under these circumstances. The Iowa courts reasonably determined that Bringus had failed to demonstrate prejudice from any alleged error by counsel in failing to present expert testimony. The district court found that expert testimony likely would not have affected the outcome of the motion in arrest of judgment hearing because the trial judge already possessed all the knowledge that an expert could have provided. Doc. 13-12 at 33-34. It also observed that Bringus' antics of pleading guilty to expedite medical treatment with the intention of later challenging the plea discounted his contentions that his plea was unknowing and involuntary. *Id.* The Iowa Court of Appeals, assuming that the motion in arrest of judgment would have been granted, reasoned that there was no reasonable probability that Bringus would have insisted on going to trial based, primarily, on his counsel's testimony at the PCR trial. Doc. 13-16 at 3-5. Bringus has failed to demonstrate that these conclusions are contrary to, or involve an unreasonable application of federal law.

Given the lack of any requirement for expert testimony under these circumstances, the choice of whether to submit such testimony is a matter of strategy, which is "virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. As the state courts pointed out,

13

counsel was able to present all the relevant information to the trial judge without expert testimony, including Bringus' pain, which only Bringus could describe. The trial judge was otherwise aware of Bringus' functional intelligence and extensively questioned him as to any effect his medication could be having on him during the plea hearing. Doc. 13-2 at 28-30. Bringus testified that he was thinking clearly. *Id.* at 30.

Moreover, it is unlikely that expert testimony would have changed the outcome because (1) the trial judge may still have denied the motion in arrest of judgment based on the judge's own observations, the plea colloquy and/or Bringus' testimony concerning his ulterior motive for pleading guilty or, had the motion been granted, (2) the improbability that Bringus would have insisted on going to trial for the reasons described in the Iowa Court of Appeals opinion. *See* Docs. 13-3 at 7-8; 13-16 at 3-4. For these reasons, Bringus has failed to demonstrate that counsel's performance was deficient or there was prejudice such that the state court decision was contrary to or involved an unreasonable application of clearly established federal law. The state courts reasonably applied *Strickland* in concluding there was no ineffective assistance of counsel.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability may be granted only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 881 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Thus, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is

straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Having thoroughly reviewed the record in this case, I find Bringus failed to make the requisite "substantial showing" with respect to the claims raised in his 28 U.S.C. § 2254 petition. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because he does not present a question of substance for appellate review, a certificate of appealability will not issue. If Bringus desires further review of his 28 U.S.C. § 2254 petition, he may request the issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman v. Benson,* 122 F.3d 518, 521 (8th Cir. 1997).

## VI. CONCLUSION

For the reasons set forth herein, petitioner Jason Jay Bringus' amended petition (Doc. 10) for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied** and this action is **dismissed with prejudice**. A certificate of appealability shall **not issue**.

**IT IS SO ORDERED** this 14th day of March, 2025.

_____
Leonard T. Strand
United States District Judge